UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| TAMARA L. MARTIN, *et al.*, | : | Case No. 1:05-cv-273 |
| | : | |
| Plaintiffs, | : | U.S. Magistrate Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| SELECT PORTFOLIO SERVING | : | |
| HOLDING CORPORATION, *et al.*, | : | |
| | : | **MEMORANDUM OPINION** |
| Defendants. | : | **AND ORDER** |

This civil action is before the Court as a result of a bench trial held on January 29, 2008, the parties having consented to final disposition by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  (Docs. 23, 25.)

Based on the findings of fact and conclusions of law stated below, the Court finds that Defendants are not liable for the alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*.

## I.    Procedural History

Plaintiffs Tamara L. Martin and Donald E. Martin initiated this action by filing a *pro se* complaint in the Hamilton County (Ohio) Court of Common Pleas against Defendants Select Portfolio Serving Holding Corporation, Select Portfolio Servicing, Inc., fka Fairbanks Capital Corp., Matt Hollingsworth, CEO (collectively "SPS"), and PMI Mortgage Insurance Co. ("PMI").  (*See* Doc. 1, "Complaint.")

Seeking monetary relief, Plaintiffs claimed that Defendants failed to comply with a judgment entered in a prior class action, *Curry v. Fairbanks Capital Corp.*, No. 03-10995-DFW, 2004 WL 3322609 (D. Mass. May 12, 2004), which ordered them to cease unfair and deceptive trade practices.  (Doc. 1 at p. 2, ¶ 2.)  Plaintiffs also claimed that Defendants violated § 5(a) of the Fair Trade and Credit Act ("FTCA"), 15 U.S.C. § 45(a); the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*.; as well as the FDCPA.

In support of their claims, Plaintiffs alleged that they received 23 default letters from SPS stating that loan payments were past due and that their home "will" or, in some cases, "may" be put in foreclosure.  (*See* Doc. 1-2 at p. 3.)  They alleged that agents for SPS mercilessly called them hundreds of times in an effort to make payment arrangements.  (*See id.*)  Plaintiffs further alleged that the stress of living under SPS's baseless threats was extraordinarily harsh and that Mr. Martin suffered a myocardial infarction in February 2005, after a dramatic escalation in the number of calls.  (*Id.* at p. 4.)  They also alleged that their credit history was ruined and that, contrary to SPS's assertions, they never missed a mortgage payment.  (*Id.* at p. 3.)

Defendants removed the action to federal district court on the basis of diversity jurisdiction.  *See* 28 U.S.C. §§ 1332, 1441, 1446.  (Doc. 1, "Defendants' Joint Notice of Removal.")  On March 20, 2006, the Court granted a motion to dismiss by PMI, terminating PMI as a party to this action.  (*See* Doc. 28.)

SPS filed a dismiss to dismiss this action as barred by the doctrine of *res judicata*

-2-

or, alternatively, by the doctrine of release, based upon Plaintiffs' participation in the *Curry* settlement. (*See* Doc. 5.) The motion was denied. (Doc. 28.) The Court determined that, even though Plaintiffs were members of the *Curry* class, their claims were not barred if and to the extent they were based on post-*Curry* conduct. (*Id.*) The *Curry* settlement was directed to a defined period from January 1, 1999 to December 10, 2003. *See Curry*, 2004 WL 3322609, at *1.

Subsequently, the Court granted in part a motion by SPS for summary judgment dismissing Plaintiffs' claims under the FTCA and the FCRA, as well as newly asserted claims under the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, and the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601. (*See* Doc. 67.)

The motion for summary judgment was denied in part with respect to Plaintiffs' claims under the FDCPA. (*See id.*) A one-day bench trial was held on January 29, 2008 to address the FDCPA claims. Based upon the evidence at trial, the Court hereby enters its findings of fact and conclusions of law.

## II. Findings of Fact

1. Plaintiffs Donald and Tamara Martin are borrowers under a real estate mortgage loan agreement executed on August 15, 2001 and recorded on August 21, 2001.

2. The terms of the mortgage loan provide in pertinent part that payments are due on the first of each month; that payments received are applied to the oldest due date; and that partial payments, or payments that are insufficient to bring the loan current, need not be applied at the time such payments are received.

-3-

3.     Prior to September 27, 2002, the loan was serviced by Household Finance Service Corporation ("Household").

4.     In July 2002, Household granted Plaintiffs' request to change the payment due date from the first to the fifteenth of the month.

5.     On July 25, 2002, Plaintiffs authorized an electronic payment to Household that was intended to satisfy their payment for June 2002.  However, according to the payment history provided to SPS by Household, a payment processed on July 1, 2002 was applied to the June 2002 due date.

6.     A payment processed on August 1, 2002 was applied to the July 2002 due date; and a payment processed on September 3, 2002 was applied to the August 2002 due date.

7.     On September 27, 2002, the loan transferred or "boarded" to Fairbanks Capital Corp., now known as Select Portfolio Servicing, Inc. (and referred to herein as "SPS"). Boarding is accomplished through a digital transfer of the loan information.

8.     SPS is not and never has been the owner of Plaintiffs' mortgage loan.

9.     The boarding information did not indicate that the payment due date had been changed from the first to the fifteenth of the month.

10.     The boarding information indicated that the Martins' loan account was "current."

11.     On the date the loan boarded to SPS, the September 2002 payment was due.

12.     On September 27, 2002, Household attempted to direct a payment to SPS form Plaintiffs' checking account.  The transfer was cancelled, marked NSF.

13.     On October 28, 2002, SPS processed a pre-authorized payment from Plaintiffs'

checking account and applied it to the September due date.

14.     On October 17, 2002, SPS sent a demand letter to Plaintiff asserting that the September payment was due and stating, "This letter constitutes formal notice of default under the terms of the Note and Deed."  This was the first of many demand letters sent to Plaintiffs, including five letters sent after December 10, 2003, the end of the period defined by *Curry*.

15.     Most of the demand letters included a statement, "This letter is from a debt collector and is an attempt to collect a debt."

16.     Demand letters are generated by SPS if a payment is not made within forty-five days of its due date.

17.     The latest of the demand letters in the record showed that by January 12, 2005, payments were due for nine months between April 2004 and December 2004.

18.     Plaintiffs tendered payments during this time period but their payments were applied to previously missed payment dates.

19.     In addition to the demand letters, SPS representatives also communicated with Plaintiffs by telephoning them at their home and their places of employment.

20.     Representatives calling for SPS identified SPS as a "debt collector."

21.     While recuperating at home in February 2005 following a heart attack, Mr. Martin asked SPS to no longer call him at home.  In reply, the caller suggested that, in the event Mr. Martin had died, his bills would have been paid.

22.     SPS stopped calling Mr. Martin at work after a request by him that it do so.

23.     Plaintiff Tamara Martin received four calls from SPS at work, and also initiated calls to SPS from her workplace.

24.     Ms. Martin had given her and her husband's work phone numbers to SPS.

25.     SPS stopped calling Ms. Martin at work after she requested that they do so.

26.     In response to an inquiry from Plaintiffs, SPS notified them that their loan was owned by Wells Fargo Bank, N.A., as Trustee, in trust for the Holders of Structured Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2002-HF2 ("Wells Fargo").

27.     The corporate assignment to Wells Fargo was recorded on March 28, 2007, following a request by the Martins that it be recorded.

28.     Mr. Martin suffered a prior heart in attack in 2002 (before SPS began servicing his loan) that was attributed to a coronary blockage.  His 2005 heart attack was treated with stents intended to prevent blockages.

29.     A credit report from 2001 assigned credit scores of 530 to 599 to Plaintiffs' credit history.  A credit report from 2007 assigned a credit score of 463.

30.     Both credit reports reflected missed payments with respect to accounts other than the mortgage loan account.

### III.    Conclusions of Law

1.      Defendants are not  "debt collectors" for purposes of the FDCPA.

The FDCPA defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the

collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The definition excludes "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii).

The FDCPA further distinguishes "debt collectors" from "creditors." As explained by the Seventh Circuit:

> Creditors, "who generally are restrained by the desire to protect their good will when collecting past due accounts," S. Rep. 95-382, at 2 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1696, are not covered by the Act. Instead, the Act is aimed at debt collectors, who may have "no future contact with the consumer and often are unconcerned with the consumer's opinion of them." *See id.* In general, a creditor is broadly defined as one who "offers or extends credit creating a debt or to whom a debt is owed," 15 U.S.C. § 1692a(4), whereas a debt collector is one who attempts to collect debts "owed or due or asserted to be owed or due another." *Id.* at § 1692a(6).

*Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003).

An entity which does not own the loan but merely "services" the loan is treated as a "creditor" and generally is not subject to the FDCPA.. *See Johnson v. Sallie Mae Servicing Corp.*, 102 Fed. Appx. 484, 487 (7th Cir. 2004) (citing *Bailey v. Security Nat. Servicing Corp.*, 154 F.3d 384 (7th Cir. 1998)). Where the debt was assigned for servicing before default of the loan, the assignee is exempt from the Act because the assignee becomes a creditor and is collecting its own debt. *See Wadlington v. Credit*

*Acceptance Corp.,* 76 F.3d 103, 106 (6th Cir. 1996).  "[A] debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) (citations omitted).

A servicing company is subject to the FDCPA nonetheless if the loan was in default at the time the servicing company acquired the loan account.  *F.T.C. v. Check Investors, Inc.*, 502 F.3d 159, 173-74 (3rd Cir. 2007).  Even if the debt was not actually in default when the servicing company acquired it, if the servicing company acquired it as a debt in default, and based its collection activities on that understanding, the servicer will be subject to the Act as a "debt collector."  *See Schlosser*, 323 F.3d at 539.  That is, even if the servicing company was mistaken as to whether the loan was (or was not) actually in default, if it treated the account as if it were in default, the § 1692a(6)(F)(iii) exclusion does not apply.

2.     There was no evidence presented to show that SPS acquired the Martins' loan account as a debt in default.  Rather, the evidence showed that at the time the loan boarded to SPS, the loan was current.

3.     There also was no evidence to show that SPS treated the loan as one it acquired in default.

SPS generated the first demand letter on October 17, 2002, twenty days after it acquired the account.  While it is possible that the Martins were unaware that the September payment attempted by Household (which no longer had their account) had

failed and that the payment tendered in early September 2002 had been applied to the August due date, it is equally possible that if they had tendered a payment on or before October 15, 2002, as required, a demand letter would not have been generated on October 17. Plaintiffs' first payment to SPS was made on October 28, 2002.

4. Plaintiffs' loan was not in default on the date it was acquired by SPS.

In applying the FDCPA, the Court must distinguish between a debt that is in default and a debt that is merely outstanding. *See*, *e.g.*, *Jones v. Intuition, Inc.*, 12 F. Supp. 2d 775, 779 (W.D. Tenn.1998) ("Prior to the default period, the unpaid loan installment is considered delinquent."). Default does not occur on a debt immediately after payment becomes due, but only after some period of time. *See Alibrandi v. Financial Outsourcing Servs., Inc.*, 333 F.3d 82, 87 (2d Cir. 2003).

The FDCPA does not define default nor establish the time period after which a default occurs. *Id.* at 86. Rather it is generally left to the parties, *i.e.*, the creditor and the debtor, to define their own period of default. *See id.* at 87 n.5.

SPS considers a loan in default when a payment is 45 days overdue. SPS acquired Plaintiffs' loan account for servicing when the payment for September 2002 was overdue fewer than 45 days.

5. Defendants' self-identification as a debt collector did not make SPS a debt collector under the FDCPA. *Prince v. NCO Financial Servs., Inc.*, 346 F. Supp. 2d 744, 751 (E.D. Pa.2004). Similarly, assertions by SPS that its actions were "an attempt to collect a debt" do not equate to an admission that it was a debt collector. *See id.* A party

who obtains a debt before it is in default does not become a debt collector under the FDCPA based on its subsequent attempts to collect that debt. *Id.*

6.      Even if this Court were to find that SPS was a debt collector with respect to Plaintiffs' account, Plaintiffs failed to present sufficient evidence to show that they are entitled to any relief under the FDCPA.

7.      Plaintiffs did not present an actionable claim for fraud based on the alleged failure to timely record the mortgage assignment to Wells Fargo.

Section 1692e of the FDCPA provides in pertinent part that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The FDCPA further requires that upon request from the borrower, a debt collector shall provide written notice to the consumer of the  the name of the creditor to whom the debt is owed. *See* 15 U.S.C. § 1692g. The FDCPA does not impose any requirements with respect to the recording of an assignment or lien.

Plaintiffs correctly state that under Ohio law, when a mortgage is assigned, the assignment is subject to the recording requirements of Ohio Rev. Code Ann. § 5301.25. *See In re Foreclosure Cases*, 2007 WL 3232430, at *2 (N.D. Ohio Oct. 31,  2007). However, Ohio law also holds that the recording statute is intended to govern priorities between lenders, not the validity of the liens. *See*, *e.g.*, *Wead  v. Lutz*, 161 Ohio App.3d 580, 586, 831 N.E.2d 482, 487 (Ohio Ct. App. 2005) (holding that the recording statute, Ohio Rev. Code Ann. § 5301.25, does not invalidate an assignment that has not been

-10-

recorded).

Evidence that the assignment was not recorded until requested by Plaintiffs does not establish a violation of the FDCPA.  The evidence presented did not establish that SPS falsely identified the creditor to whom the Plaintiffs' debt is owed or that the lack of a recording was a deceptive or misleading representation used in connection with the collection of a debt.

8.      SPS did not violate the FDCPA's general rules concerning communication by calling Plaintiffs at their places of employment.

The FDCPA prohibits a debt collector from calling a consumer at the consumer's place of employment if the debt collector "knows or has reason to know that the employer prohibits the consumer from receiving such communications."  15 U.S.C. §1692c(a)(3); *see Crain v. Pinnacle Fin. Group of MN, Inc.*, No. 07-CV-12075, 2007 WL 3408540, at *5 (E.D. Mich. Nov. 14, 2007).

There is no evidence to show that SPS knew or had reason to know that Plaintiffs' employers prohibited them from receiving calls at work.  Rather there was evidence that Ms. Martin provided her and her husband's work numbers to SPS and initiated calls to SPS from her workplace.  Additional evidence showed that SPS ceased making calls to Mr. Martin's workplace after he requested that they do so.

9.      SPS did not violate the  FDCPA's rules against harassment.

Section 1692d provides that a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress or abuse, including "causing a

-11-

telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. § 1692d(5).

To prevail under § 1692d, the consumer must show not only that the contents of the calls were harassing, abusive, or misleading, but must also establish the callers' intent. *See Juras v. Aman Collection Serv., Inc.*, 829 F.2d 739, 741(9th Cir. 1987), *cert. denied*, 488 U.S. 875 (1988). A debt collector may violate § 1692d(5) when its employee adopts an intimidating posture in telephone conversations. *See Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1516 (9th Cir. 1994). In determining whether the debt collector intended to annoy, abuse and harass the consumer, the Court may consider frequency, persistence, and volume of the telephone calls. *See Lovelace v. Stephens & Michaels Assocs., Inc.*, NO. 07-10956, 2007 WL 3333019, at *7 (E.D. Mich. Nov. 9, 2007); *Sanchez v. Client Servs., Inc.*, 520 F. Supp. 2d 1149, 1161 (N.D. Cal. 2007).

10.    The evidence does not support a finding that the number or frequency of calls to the Martins reflects an intent to annoy, abuse or harass. Although a phone log introduced as evidence shows numerous contacts between Plaintiffs and SPS, it does not show that SPS initiated more than two calls on any day or that SPS called Plaintiffs every day as initially alleged.

11.    The evidence also does not support a finding that any caller for SPS adopted an intimidating posture with intent to annoy, abuse or harass. Any call from a debt collector may be presumed to be unwelcome, but that alone is insufficient to constitute a violation

-12-

of the FDCPA.

The callous comment made to Mr. Martin after his heart attack is insufficient to establish a violation of the FDCPA. A § 1692d claim cannot be predicated on a single alleged statement. *See Arroyo v. Solomon & Solomon, P.C.*, No. 99-CV-8302 (ARR), 2001 WL 1590520, at \*14 (E.D.N.Y. Nov. 16, 2001) ("The question for the jury is whether the entire conversation, taken as a whole, had the natural effect of harassing, oppressing, or abusing a debtor.") (citing *Rutyna v. Collection Accounts Terminal, Inc.* 478 F. Supp. 980, 982 ( D.C. Ill. 1979)).

12. SPS did not violate the FDCPA's rules concerning false and misleading statements.

Section 1692e provides in pertinent part that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Conduct that is a violation this section includes the false representation of the "character, amount, or legal status of any debt," and "the representation or implication that nonpayment of any debt will result in . . . the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action." 15 U.S.C. § 1692e(2), (4). The Act also prohibits "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8).

The Martins alleged in the complaint that they received letters falsely stating that their loan was in default and threatening that their home "would"or "may" be put in foreclosure.

The Martins cannot prevail under § 1692e(2)(A) because they did not prove that the amounts represented in the five post-*Curry* letters were incorrect.  *See Savage v. Hatcher*, 109 Fed. Appx. 759, 761 (6th Cir. 2004).  The evidence showed that the Martins failed to make timely monthly payments on at least nine occasions and that the payments received by SPS were applied in manner consistent with the terms of the mortgage agreement.

13.     Plaintiffs are not entitled to statutory damages because they did not prove a violation of the FDCPA.  *See Irwin v. Mascott*, 112 F. Supp. 2d 937, 960 (N.D. Cal. 2000).

14.     Plaintiffs are not entitled to compensatory damages because they did not prove liability nor actual damages proximately caused by SPS.  *See id.*; *see also Lamb v. M & M Assocs., Inc.*, No. C-3-96-463, 1998 WL 34288694, at *14 (S.D. Ohio Sept. 1, 1998).

15.     Plaintiffs do not contend, and the evidence does not show, that SPS's actions were the proximate cause of Mr. Martin's heart attack.

16.     Ms. Martin's testimony did not establish that her anxiety and emotional distress were proximately caused by a violation of the FDCPA by SPS, as opposed to permissible collection communications by SPS concerning missed payments.

17.     Plaintiffs did not provide evidence of damage to their credit as the proximate cause

-14-

of any action by SPS.

## IV.  CONCLUSION

Accordingly, for the reasons stated, this Court finds Defendants Select Portfolio Serving Holding Corporation, Select Portfolio Servicing, Inc., fka Fairbanks Capital Corp., and Matt Hollingsworth, CEO, **ARE NOT LIABLE** to Plaintiffs Tamara L. Martin and Donald Martin for the alleged violations of the FDCPA.

**IT IS SO ORDERED.**

Date:  3/1/08                                            s/Timothy S. Black
                                                                  Timothy S. Black
                                                                  United States Magistrate Judge